IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JERAMY C. SCOTT,

    Plaintiff,

       v.

WESLEY HARRIS, G.S.C., INC.,

    Defendant.

                 CIVIL NO.: WDQ-13-3881

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Jeramy C. Scott sued Wesley Harris, G.S.C., Inc. ("Harris")
for employment discrimination, in violation of Title VII of the
Civil Rights Act of 1964 ("Title VII").[1]  ECF No. 18.  Pending
are Harris's motion to dismiss, ECF No. 5, and Scott's motion
for leave to file an amended complaint, ECF No. 18.  No hearing
is necessary.  Local Rule 105.6 (D. Md. 2011).  For the
following reasons, Harris's motion will be denied as moot, and
Scott's motion will be granted.

I.   Background[2]

Scott--an African American male--developed a drug problem
in his youth that eventually led to his conviction and
imprisonment for "a crime committed with other similar young

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] The facts are taken from the amended complaint.  ECF No. 18-2.
For the motion to dismiss for failure to state a claim, the
well-pled allegations in the complaint are accepted as true.
*See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

men." ECF No. 18-2 ¶ 6. Following his 2009 release from prison--and after passing a criminal background check--Scott obtained a job at Fort Meade in Maryland as a stocker and janitor for the commissary. *See id.* ¶¶ 2, 7, 9. Upon his hiring, Scott was issued a badge to enable him to enter the military base. *See id.* ¶ 9.

From 2009 until May 1, 2012, Scott successfully worked as a janitor and stocker for two different government contractors.[3] *Id.* ¶ 7. While working in the commissary, Scott became aware that other workers also had criminal records, and--like him--had passed background checks that enabled them to work in the commissary. *See id.* ¶ 12. For example, Jose Antonio Navarro-- who is Hispanic--had been convicted and imprisoned for, *inter alia*, drug trafficking and possession. *See id.* ¶¶ 13, 15. Also, Hispanic workers Carmen Martinez and stocker Edwin Guzman had previous felony convictions. *See id.*

On May 1, 2012--after a successful bid for the contract to provide Fort Meade's commissary services--Harris took over operation of the commissary. *See id.* ¶ 5. Harris was required

---

[3] The contractors that operated the commissary during this period performed criminal background checks of the commissary employees, and they determined that Scott had sufficient security clearance to hold an access badge. *See* ECF No. 18-2 at ¶¶ 9, 11, 22.

by the Service Contract Act[4] to offer employment to the previous contractor's employees before hiring new workers. *See id.* ¶ 10. Accordingly, Harris offered Scott his same job in the commissary, which Scott accepted. *Id.* ¶ 11. Harris issued Scott an entry badge to the base.[5] *See id.* ¶¶ 11, 18.

After taking over the contract, Harris performed criminal background checks of all the employees. *See id.* ¶ 11. Following the checks, Navarro and Guzman were promoted to supervisory jobs, but two of Scott's fellow African-American workers with criminal records--Lewis Gerson and Kathy Harris-- were fired. *See id.* ¶ 16. On June 7, 2013, Scott was fired for not passing his background check. *See id.* ¶ 17. When Scott pointed out that Navarro was not fired after his background check, Harris told Scott that "drug trafficking is not 'nearly identical' to [Scott's] convictions." *See id.*

On October 5, 2012, Scott filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). ECF

---

[4] 41 U.S.C. §§ 6701 *et seq.*

[5] Employees with "busy" criminal histories--multiple felony convictions--over the previous ten years, and those listed on a sexual assault registry, could not be granted access to the base. *See* ECF No. 18-2 ¶ 25. Otherwise, Harris had discretion to deny employees access to the base if their criminal checks were "unfavorable." *See id.* ¶¶ 18-19, 24-25. Scott did not have a "busy" criminal record, and he was not on the sexual assault registry. *Id.* ¶ 26. Thus, Harris's contract did not prevent it from retaining Scott in his job and granting him access to the base. *See id.* ¶ 19.

No. 1 at 2.  On October 30, 2013, the EEOC issued Scott a right to sue letter.  ECF No. 1-3 at 1.  On December 23, 2013, Scott, *pro se*, sued Harris for employment discrimination on the basis of race, in violation of Title VII.  ECF No. 1.  On February 17, 2014, Harris moved to dismiss the complaint for failure to state a claim.  ECF No. 5.  On April 24, 2014, Scott, through counsel, moved for leave to file an amended complaint.[6]  ECF No. 18.  On May 12, 2014, Harris opposed the motion.  ECF No. 19.  On June 1, 2014, Scott replied.  ECF No. 20.

II.  Analysis

    A. Legal Standards

        1. Motion for Leave to Amend

    Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.[7]  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).  An amendment is futile if it would fail to withstand a motion to

---

[6] Although Harris contends that its motion to dismiss is "unopposed," *see* ECF No. 19 at 2, the Court considers Scott's motion and proposed amended complaint as an opposition to dismissal of the case.

[7] Harris does not assert that Scott seeks leave to amend in bad faith or that his amendment would cause prejudice.

dismiss.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

### 2. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief. *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged--but it has not shown--that the pleader is entitled to
relief." *Id.* (internal quotation marks and alteration omitted).

B. Title VII Claim

Title VII prohibits an employer from discharging or
discriminating against an employee because of race, color,
religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).
To state a *prima facie* claim of race discrimination, Scott must
allege facts showing: "(1) membership in a protected class; (2)
satisfactory job performance; (3) adverse employment action; and
(4) different treatment from similarly situated employees
outside the protected class." *Coleman v. Md. Court of Appeals*,
626 F.3d 187, 190 (4th Cir. 2010).

As an African-American, Scott is a member of a protected
class under Title VII. *Carter v. Ball*, 33 F.3d 450, 459 (4th
Cir. 1994). Scott suffered an adverse employment action when
his employment was terminated. *See, e.g.*, *Elries v. Denny's,
Inc.*, 179 F. Supp. 2d 590, 598 (D. Md. 2002). Scott has alleged
that he "successfully" performed his job under two previous

6

contractors,[8] and was re-hired--at least for a time--by Harris.
*See* ECF No. 18-2 ¶¶ 7, 11.  He also alleged that he was fired
because Harris considered his criminal background check
"unfavorable"--not for performance reasons.  *See id.* ¶¶ 17, 20.
Thus, Scott has sufficiently alleged that his job performance
was satisfactory when he was fired.[9]

As to the fourth element, Harris argues that Scott's
allegations are insufficient, because he has not shown that he
is "similar in all relevant respects to [his] comparators."  *See*
ECF No. 19 at 4.  "A plaintiff that bases [his] allegations
entirely upon a comparison to an employee from a non-protected
class must demonstrate that the comparator was 'similarly
situated' in all relevant respects."  *Crawford v. Department of
Corr. Educ.*, No. 3:11CV430-HEH, 2011 WL 5975254, at *7 (E.D. Va.

---

[8] Although Scott alleged that new contractors were obligated to
re-hire him under the SCA, he also alleges that contractors had
discretion not to re-hire employees with "unfavorable" criminal
background checks.  *See* ECF No. 18-2 ¶¶ 10, 18-19, 24.  Harris
apparently considered his background check "unfavorable."  *See
id.* ¶ 17.  Thus, the Court may infer that the contractor that
preceded Harris did not re-hire Scott merely because it was
required to under the SCA; instead, the contractor exercised its
discretion to re-hire Scott despite his "unfavorable" background
check.

[9] *See, e.g., Moss v. Pasquotank Cnty.*, 2:10-CV-56-BR, 2012 WL
2325846, at *3 (E.D.N.C. June 19, 2012) (plaintiff sufficiently
alleged satisfactory job performance by stating that she
"successfully" performed her job duties); *Oates v. Trustees of
Gaston Coll.*, 3:12-CV-853-RJC-DCK, 2013 WL 3466955, at *3
(W.D.N.C. July 10, 2013) (plaintiff alleged satisfactory job
performance by stating, *inter alia*, that her contract for
employment had been renewed multiple times).

Nov.29, 2011); *see also Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). A similarly situated employee is like the plaintiff "with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000); *Holtz v. Jefferson Smurfit Corp.*, 408 F. Supp. 2d 193, 206 (M.D.N.C. 2006) *aff'd,* 242 F. App'x 75 (4th Cir. 2007). "[A]n employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue,* 219 F.3d at 618.

Scott has identified multiple, allegedly similarly situated employees outside his protected class who were treated more favorably by Harris. Although Scott's amended complaint is not a model of clarity, the Court may infer from Scott's allegations that he--like Navarro--has previous felony drug convictions, and that he--unlike Navarro--was terminated for failing his background check.[10] *See* ECF No. 18-2 ¶¶ 6, 13. Also, Guzman-- who also worked as a stocker--and Martinez were not terminated despite their previous felony convictions. *See id.* ¶¶ 13, 15. Navarro, Martinez, and Guzman are not African-American, and thus are outside of Scott's protected class. *See id.* Finally, Harris terminated other African American employees with "almost

---

[10] Although it is not entirely clear, Scott also appears to allege--by labeling Navarro a "drug kingpin"--that Navarro's drug convictions were more serious than Scott's convictions. *See* ECF No. 18-2 ¶¶ 6, 20.

identical" criminal histories as non-African American employees who were not terminated. *See id.* ¶ 21. These allegations are sufficient to state a facially plausible claim that Scott--and other African-American employees--were treated differently than other "substantially" similar employees outside the protected class. Although the evidence may ultimately show that these employees are not sufficiently comparable, at this stage, Scott has plausibly alleged that similarly situated employees outside his protected class were treated more favorably.[11]

Because the amended complaint would survive a motion to dismiss, the amendment is not futile. *See Perkins,* 55 F.3d at 917. The Court will grant Scott's motion to file the amended complaint, and will deny Harris's motion to dismiss--which was filed before the amended complaint--as moot.

---

[11] *See Coleman*, 626 F.3d at 190 (*citing Twombly*, 550 U.S. at 55) (noting that "plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss" as long as he establishes a "plausible" discrimination claim); *e.g.*, *Moss*, 2012 WL 2325846, at *4 (allegations that "two white males and a white female" received more favorable treatment, such as "higher performance evaluations for less acceptable work performance," were sufficient to show different treatment from similarly situated employees outside the protected class); *Taylor v. Sci. Applications Int'l Corp.*, 2:12-CV-0659-RMG, 2012 WL 5301333, at *3 (D.S.C. Oct. 25, 2012) (plaintiff had sufficiently alleged different treatment, because she had identified by name the similarly-situated male employees who had received more compensation); *Copeland v. Ecolab, Inc.*, CIV. WDQ-10-1158, 2011 WL 6019343, at *3 (D. Md. Nov. 29, 2011) (plaintiff's allegations that he was fired because he had an outside business, although a white employee with an outside business was not fired, were sufficient to allege different treatment).

III. Conclusion

For the reasons stated above, Harris's motion to dismiss will be denied as moot, and Scott's motion for leave to amend the complaint will be granted.

_8/7/14_
Date

_[signature]_
William D. Quarles, Jr.
United States District Judge